PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| TAREQ ALASADI, ) | |
| ) | CASE NO. 4:11CV01342 |
| Plaintiff, ) | |
| ) | |
| v. ) | JUDGE BENITA Y. PEARSON |
| ) | |
| U.S. CITIZENSHIP & IMMIGRATION ) | |
| SERVICES, *et al.*, ) | |
| ) | **MEMORANDUM OF OPINION AND** |
| Defendants. ) | **ORDER** [Resolving ECF No. 24.] |

This matter is before the Court upon Defendant's Motion to Remand. ECF No. 24. The Court has reviewed the record, the parties' briefs and the governing law. For the reasons provided below, the Court grants the Motion and provides accompanying instructions.

**I. Factual and Procedural Background**

This action arises from the failure of Defendant[1] United States Citizenship & Immigration Services (USCIS) to adjudicate Plaintiff Tareq Alasadi's application for naturalization within the 120-day period specified in 8 U.S.C. § 1447(b).[2] Alasadi has been a lawful permanent resident

---

[1] The other named Defendants in this action are Alejandro Mayorkas, Director of the USCIS; Mark Hansen, District Director of the USCIS for the Northern District of Ohio; Robert Mueller, Director of the Federal Bureau of Investigation (FBI); Stephen Anthony, Special Agent-In-Charge of the FBI's Cleveland office; and Janet Napolitano, Secretary of the United States Department of Homeland Security.

[2] 8 U.S.C. § 1447(b) provides: "If there is a failure to make a determination under section 1446 of this title before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter."

(4:11-cv-01342)

of the United States since October 18, 2004. ECF No. 17 at 1. On or about August 21, 2009, USCIS received Alasadi's application for naturalization. ECF No. 17 at 2. USCIS subsequently interviewed Alasadi in connection with his application at its field office in Cleveland on November 16, 2009. ECF Nos. 17 at 13; 24-2 at 2. Although, as of July 31, 2011, the average processing time for the N-400 application for naturalization was approximately five months (ECF No. 17 at 3), USCIS has not yet determined Alasadi's application. ECF No. 24-1 at 7.

In a Complaint filed on June 30, 2011 (ECF No. 1), Alasadi requests that the Court assume jurisdiction and grant his application for naturalization in accordance with 8 U.S.C. § 1447(b). Alternatively, Alasadi prays that the Court invoke its *mandamus* powers and compel the completion of an allegedly pending FBI "name check" so that his application may be adjudicated. Alasadi also seeks attorneys fees pursuant to the Equal Access to Justice Act.[3]

On May 18, 2012, USCIS moved to remand this matter back to the agency for further investigation. ECF No. 24. In its supporting memorandum of law, USCIS claims that in the course of Alasadi's background check, "issues arose that require further inquiry" and the agency "may not adjudicate [Alasadi's] application until [it] receives definite and favorable responses on all security and background checks." ECF No. 24-1 at 3-4. Alasadi filed an opposition on June 12, 2012 (ECF No. 25), to which USCIS filed a reply on June 26, 2012. ECF No. 26. USCIS's Motion to Remand is ripe for the Court's review.

---

[3] In addition, Alasadi seeks judicial review of the agency's decision in the event USCIS denies his application during the pendency of this litigation. The record does not disclose, however, that USCIS has rendered a decision in regard to Alasadi's application.

2

(4:11-cv-01342)

## II. Discussion

Congress has conferred upon the Attorney General the sole authority to naturalize persons as citizens of the United States.  8 U.S.C. § 1421(a).  The United States district court, however, has jurisdiction over naturalization applications in limited contexts.  For instance, a person whose application for naturalization is denied may seek the district court's review after a hearing has been conducted before an immigration officer.  8 U.S.C. § 1421(c).  Furthermore, "[i]f there is a failure to make a determination [upon the application] before the end of the 120-day period after the date on which the examination is conducted . . . the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter.  Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter." 8 U.S.C. § 1447(b). Although a minority of district courts have held that word "examination" in § 1447(b) means the *entire* examination process; see *Danilov v. Aguirre*, 370 F. Supp. 2d 441, 444 (E.D. Va. 2005); the overwhelming consensus is that the term refers to the interview that is held between the naturalization applicant and a CIS officer.  See *Farooq v. Hansen*, 2007 WL 2177890 (N.D. Ohio 2007); *Elaloul v. Hansen*, 2007 WL 1299274 (N.D. Ohio 2007); *Affaneh v. Hansen*, 2007 WL 295474 (S.D. Ohio 2007); *see also Hussein v. Gonzalez*, 474 F. Supp. 2d 1265, 1268 (M.D. Fl. 2007); *Issa v. Mueller*, 486 F. Supp. 2d 668, 671-72 (E.D. Mich. 2007); *Asgari v. Gonzales*, 2007 WL 1834710 (S.D. Mich. 2007); *Essa v. USCIS*, 2005 WL 3440827 (D. Minn. 2005); *Al-Farisi v. Mueller*, 492 F. Supp. 2d 335, 337 (S.D.N.Y. 2007); *Castracani v. Chertoff*, 377 F. Supp.2d 71, 74 (D.D.C. 2005); *El-Daour v. Chertoff*, 417 F. Supp. 2d 679, 683 (W.D. Penn. 2005).

(4:11-cv-01342)

USCIS does not contest the majority interpretation of § 1447(b), and it acknowledges that Alasadi's application has not been adjudicated within 120 days from the date of his interview. ECF Nos. 17 at 3; 24-1 at 7. Nonetheless, USCIS argues that the Court should remand the matter because the agency uncovered several "outstanding issues" in the course of its background investigation that require further inquiry, including: (1) a multiple-count indictment in the State of Ohio alleging that Alasadi, his employer, USA Trading Corporation, and other defendants were involved in illegally trafficking untaxed tobacco products from June 1, 2010, to October 31, 2010; (2) a pending investigation of USA Trading by the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF); and (3) a representation by Shaun Sweeney, the Assistant United States Attorney involved in the ATF investigation, that he "has been in direct contact" with Alasadi's attorney. ECF Nos. 24-1 at 2-4; 24-2; 24-3. While USCIS acknowledges that the indictment was dismissed as to Alasadi on May 11, 2011 (ECF Nos. 24-1 at 2; 24-4), it claims to not have had an opportunity to interview him regarding the indictment. ECF No. 24-1 at 4.

In response, Alasadi submitted an affidavit attesting that he stopped working for USA Trading in November, 2011, he was merely a salaried employee of USA Trading during his employment and neither he nor any member of his family has ever been an owner, stockholder, director or officer of the corporation. ECF No. 25-1 at 4-5. Alasadi further testified that he has not had a criminal defense attorney since the indictment against him was dismissed, and, although AUSA Sweeney did contact his former attorney, the communication involved an inquiry as to whether Alasadi was willing to testify against his former employer. ECF No. 25-1 at 5-6. In Alasadi's view, the delay in his application cannot be justified on the basis of a

4

(4:11-cv-01342)

dismissed indictment and a prior affiliation with a company where he no longer works. ECF No. 25 at 3, 14. He, moreover, opposes the remanding of this action because he believes the agency's purpose is to delay the adjudication of his application as long as possible. ECF No. 25 at 1.

In considering the issues presented, the Court takes seriously and is guided by the admonition of the United States Supreme Court that, in general, a court "should remand a case to an agency for decision of a matter that statutes place primarily in agency hands." *Immigration & Naturalization Service v. Ventura*, 537 U.S. 12, 16, 123 S. Ct. 353, 154 L. Ed. 2d 272 (2002). This is because "[t]he agency can bring its expertise to bear upon the matter; it can evaluate the evidence; it can make an initial determination; and, in doing so, it can, through informed discussion and analysis, help a court later determine whether its decision exceeds the leeway that the law provides." *Id.* at 17. This Court is not alone in according an appropriate measure of deference upon the agency that has the mandate, experience and expertise to make a specialized type of determination. "[A]n order of remand comports with Congressional intent that [USCIS] make the initial determinations regarding naturalization applications"; *Farooq v. Hansen*, 2007 WL 2177890 (N.D. Ohio 2007); and a "majority" of courts "have declined to determine the merits of the application, instead remanding the case to USCIS as a more appropriate remedy." *Elaasar v. Mueller*, 522 F. Supp. 2d 939, 936 (N.D. Ohio 2007). In many instances, "courts recognize their lack of expertise and the lack of information available to assess whether the plaintiff satisfied the various criteria for naturalization." *Shendaj v. Dedvukaj*, 543 F. Supp. 2d 724, 728 (E.D. Mich. 2008); *see Patel v. Hansen*, 2008 WL 148947 (S.D. Ohio 2008) ("A district court is ill-suited to deciding a naturalization petition; it does not have the resources to

5

(4:11-cv-01342)

experience to properly evaluate the multitude of individual factors that must be considered."); *Afanen v. Hansen*, 2008 WL 686767 (S.D. Ohio 2008) ("this Court does not have the capacity to complete the background check which Congress has mandated in these cases"); *Issa v. Mueller*, 486 F. Supp. 2d at 674 ("such an inquiry is an inefficient use of judicial resources").

      This deference, however, does not imply that district courts may abdicate their judicial responsibilities to safeguard applicants' rights to a reasonably prompt decision.  Congress bestows jurisdiction upon the district courts 120 days after the initial interview with an applicant for naturalization to "reduce the waiting time for naturalization applicants"; *U.S. v. Hovsepian*, 359 F.3d 1144, 1163 (9th Cir. 2004); and ensure the agency "does not unreasonably delay its decision." *Omeiri v. District Director, Bureau of Citizenship & Immigration Services*, 2007 WL 2121998 (E.D. Mich. 2007).  In cases of extreme, unjustified delay, some district courts have not hesitated to hear and decide the application for naturalization.  *See, e.g., Atmeh v. Chertoff*, 2008 WL 4822067 (E.D. Mich 2008) (denying motion to remand where 84 months had elapsed since plaintiff's initial interview and USCIS provided "no reasonable explanation of its delays" in deciding application); *Chebli v. Chertoff*, 2007 WL 2571967 (E.D. Mich. 2007) (declining remand upon finding that remand "would do nothing to ensure that defendant will . . . make a decision"); *Shalan v. Chertoff*, 2006 WL 42143 (D. Mass. 2006) (declining remand where USCIS "offer[ed] no reasons specific to plaintiff for the extensive time expended in completing review").  The district court may and should exercise its statutory prerogative in such scenarios.

      For the time being, the briefs and exhibits submitted in this proceeding do not readily demonstrate that this action is one over which the Court should retain jurisdiction.  The state

6

(4:11-cv-01342)

indictment against Alasadi was filed after his citizenship interview, and USCIS was entitled to a period of time in order to pursue an investigation. USCIS is also in the best position to evaluate the pending investigation against Alasadi's former employer, USA Trading. What effect these matters have upon Alasadi's qualification for citizenship is a question that the agency, through its reservoir of specialized training and experience, is better equipped than the Court to answer.

Nevertheless, the Court shares Alasadi's reservation concerning the lack of any timetable in the agency's Motion. This omission is not acceptable in light of evidence that USCIS has not administered Alasadi's application with complete diligence. There is no dispute that the indictment against Alasadi was dismissed on May 11, 2011, and USCIS was informed of the dismissal on May 20, 2011. ECF No. 15-1 at 4; 15-3. Yet, seventeen months later, USCIS has not explained why it has not interviewed Alasadi about the indictment even though the agency maintains this interview is an integral part of his background check. ECF No. 24-1 at 4. Moreover, the connection between the ATF investigation and Alasadi appears tenuous indeed. Alasadi is no longer employed by USA Trading, he was never an owner, director or officer of the entity, and the reason Sweeney, the federal prosecutor, contacted Alasadi's former attorney was to inquire whether he was able to testify against the corporation. The record does not disclose that Alasadi is a subject of the ATF investigation or that the government has any interest in him beyond his testimony as a witness. Under these circumstances, the Court will not permit Alasadi's application to languish any further.

Therefore, while the Court concludes that Alasadi's application should be determined by USCIS, additional delays will not be countenanced. Nearly three years have passed since Alasadi

(4:11-cv-01342)

was interviewed by the USCIS. This is not a case where the agency's ability to decide an application is compromised by the failure of an outside agency to provide necessary information. See *Afaneh v. Hansen*, 2008 WL 686767 (S.D. Ohio 2008) (failure of FBI to process "name check"); *Duri v. Hansen*, 2007 WL 3125303 (N.D. Ohio 2007) (same); *Mahamoud v. Mueller*, 2007 WL 3232457 (S.D. Ohio 2007) (same). To the contrary, Karyn Zarlenga, a USCIS supervisor in the Cleveland office, submitted a declaration stating that the agency has received the necessary results from the FBI and the Interagency Border Inspection System with respect to Alasadi's application. ECF No. 24-2 at 2-3. Consequently, USCIS has no basis for delay and now must adjudicate Alasadi's application with promptness. Based on the facts presented, the Court concludes that sixty (60) days is sufficient time for USCIS to expeditiously complete any outstanding investigatory steps. If the agency fails to comply with this Order, Alasadi may re-file this action, whereupon the Court will determine the appropriate course of action.

### III. Conclusion

Based on the reasons provided, the Court GRANTS the Motion to Remand with express instructions that Alasadi's application for naturalization shall be adjudicated no later than sixty (60) days from the date of this Order.

IT IS SO ORDERED.

| | |
|---|---|
| October 23, 2012 | /s/ Benita Y. Pearson |
| Date | Benita Y. Pearson |
| | United States District Judge |